## (October 20, 1981)

■ In the Matter of WILLIAM SINNOT et al., Appellants, v THOMAS M. MONAHAN et al., Constituting the Board of Elections of the County of Rensselaer, Respondents. (And One Other Proceeding.) — Appeal from so much of an order and judgment of the Supreme Court at Special Term (Conway, J.), entered October 7, 1981 in Rensselaer County, which, in a proceeding pursuant to section 16-106 of the Election Law, directed the respondent election commissioners not to canvass or cast ballots contained in the two affidavit envelopes from the Eighth Ward of the City of Troy cast by Thomas Callagan and Rita Callagan in the Primary Election of the Right to Life Party held on September 10, 1981. The undisputed facts and circumstances underlying this proceeding conclusively show that due to the errors of the personnel in charge of their polling place, Mr. and Mrs. Thomas Callagan, as enrolled members of the Right to Life Party, were deprived of their right to vote in that party's Primary Election. When they arrived at their polling place to vote, the Callagans were mistakenly given a "pink card" and told to present it to the officer in charge of the polling booth. A "pink card" designated the Callagans as members of the Republican Party. Accordingly, by a mechanical manipulation, the officer locked all the voting levers except those on the Republican line. After Mrs. Callagan, who had entered the booth first, had closed the curtain behind her, she attempted but was unable to pull down the lever for the county officers on the Right to Life Party line. When she called out to the officer to inquire why this was so, she was told that she had to vote Republican. Pursuant to this direction and in order to open the curtain of the booth, Mrs. Callagan alleges that she cast one vote on the Republican line.* After exiting, she inquired when she could vote for the Right to Life candidates and was informed not until "Election Day, November". Mr. Callagan was subjected to the same procedures and directions except that he alleges that he cast two votes on the Republican line in order to release the curtain of the polling booth. Upon their return home, Mr. Callagan called the Rensselaer County Board of Elections and was told that he and his wife should return to their polling place and vote by emergency paper ballots which they did. When these paper ballots were canvassed at the Board of Elections, the two commissioners split in their decision as to whether these ballots should be counted. This split decision prompted the instant proceeding. Special Term, relying on the premise that no person can vote twice in any election, dismissed the petition. We disagree. Because the Callagans were ineligible to vote on the Republican line in the primary and because that was the only line made available to each of them due to the mistakes of the personnel in charge of the polling place, the votes of each of the Callagans on the Republican line were absolutely void. Accordingly, their votes by paper ballot were not a "second vote". Such votes were the only

* The Republican Primary Election is not an issue here — nor was it contested.

valid votes that the Callagans could and did cast and should be counted (see *Matter of Celler v Larkin,* 71 Misc 2d 17, 22-23, affd 40 AD2d 603, affd 31 NY2d 658). The order and judgment of Special Term should be reversed and the paper ballot votes cast by each of the Callagans on primary day in the Eighth Ward of the City of Troy should be counted. Order and judgment reversed, on the law and the facts, without costs, petition granted, and respondents directed to count the paper ballots here in issue. Sweeney, Kane and Casey, JJ., concur.

Mahoney, P.J., and Weiss, J., dissent and vote to affirm in the following memorandum by Mahoney, P.J. Mahoney, P.J.(dissenting). We respectfully dissent. Since it cannot be questioned that Mr. and Mrs. Callagan voted in the Republican Party Primary Election, it necessarily follows that they cannot be permitted to vote twice. Further, since the voting machine was not out of repair, nor was the registration poll record lost or misplaced (Election Law, §§ 7-120, 8-302, subd 3, par [f], cl 2), use of the emergency ballots was not authorized.